Ellis *vs.* Rachels *et al.*

SAMUEL D. ELLIS, trustee, plaintiff in error, *vs.* MILTON R. RACHELS *et al.*, defendants in error.

When, in 1858, Nathan Truitt died, leaving a will in which he bequeathed to be B certain negroes, (described as old and faithful slaves,) and certain other property in trust, directing that B should permit them, as long as any of them wish, to cultivate, for their support, a certain parcel of land, and see to it that they were well treated, and provided that, at B's death, before the death of all the negroes, the trust should pass to C, and after the probate of the will, no action was taken by B in the matter, and the negroes and other property passed in the usual course of administration to the residuary legatee, and since the emancipation of the slaves, B filed a bill to set up the trust:

*Held,* That the bill was properly dismissed by the Chancellor for want of equity.

Where the record failed to reach this Court in time for its regular term, by reason of the sickness of the family of counsel for plaintiff in error, a motion to dismiss it, because not here in time, was overruled and the cause was ordered to be docketed for the next term. (R. See end of Report.)

Emancipation. Wills. Before Judge BIGBY. Troup Superior Court. November Term, 1869.

On the 18th of December, 1858, Nathan Truitt of said county, made a last will and testament, by which he disposed of most of his property to his wife and his daughter, Mrs. Willis. The third item of said will was in these words:

"I give and bequeath unto my beloved and trusty friend, Samuel D. Ellis, my old and faithful slaves, to-wit: Jim, Sam, George, the blacksmith, Cyrus, London, Isaac, Nancy, Fanny, Melly, Jinny, and Harlow, together with three good mules, and a good two horse wagon, six months supply of provisions, and two hundred acres of land of the Hopson place, to be selected by him; which said negroes and other property are to be delivered to the said Samuel D. Ellis, after the death of my wife Elizabeth Truitt; and I do hereby give and bequeath it to him, in trust, and for the purpose hereinafter specified to-wit; the said negroes I give to him for the purpose of providing for and taking care of them

during their natural lives, with the right of using and cultivating the said land, and other property so given for the benefit, use and support of said slaves, the said slaves to be kindly treated by him and to work and cultivate said land for their support. And if said two hundred acres should not be sufficient to support said negroes, I desire that the said Saumel D. Ellis shall cultivate with said negroes as much more of said Hopson place as will be sufficient for that purpose. And, in the event of the death of the said Samuel D. Ellis, before all of said negroes shall depart this life, then it is my will and desire that my nephew, James Truitt, shall take and hold said negroes, land and other property given to the said Ellis for the same purpose."

Nathan Truitt died, and said will was probated in 1859, in said county. In February, 1869, said Ellis, as trustee for said slaves, filed his bill in said county, against Rachels, (who had married Mrs. Willis,) and the other persons in interest. He set forth said will, and averred that said third item was made for the purpose of providing for said slaves without hard labor, and for "making their condition as comfortable as possible, and their descent to the grave in their age, as easy as their infirmities would permit and unfavorable legislation would authorize, in recompense for the labor of their youth and prime, which laid the foundation of the immense estate." It averred that testator's wife died "in the year 1860," that Rachels, "after marrying with Mrs. Willis," settled with testator's executor and took charge of the whole estate for the benefit of the parties in interest, and that neither the executor nor Rachels had or would deliver to him, as such trustee, said property by said item conveyed, nor allow him to select said land for said purpose. Setting out the value of said property, and claiming interest on that value from the death of testator's wife, and the right to make said selection, he concluded with a prayer for a decree against the defendants to secure the said rights of said negroes.

The defendants demurred, saying there was no equity in said

bill, because said item was void under the Act of 1818, forbidding *intra-territorial* manumission of slaves in this State, and "for divers other good causes of demurrer appearing in said bill," and prayed that the bill should be dismissed. The other grounds insisted upon in argument below and here, were that if the bequest was good, Ellis had no title, because, by emancipation in 1865, his trust was executed and the negroes should sue in their own names, and because it did not appear that said negroes were living, or if living, wished to have said property and work said land for said purposes.

The Chancellor sustained the demurrer, and dismissed the bill, upon what ground does not appear. The dismission of the bill is assigned as error.

(NOTE. This bill of exceptions was filed in the Court below on the 15th of April, 1870. It had not been sent up to June Term, 1870. Then a motion was made to compel it to be sent up and enter it upon the docket of that term, and dismiss it, because it was not sent up in time. Upon showing by Mr. Walker that the delay was caused by sickness in his family, the motion was overruled, and the case was ordered on the docket of the next term.)

J. S. WALKER. B. H. BIGHAM, for plaintiff in error. The will conforms to the policy of the State: Old Code, secs. 1854, 1855, 1859; 18th Ga. R., 563; 14th, 2612. It is not against Act of 1818: Charl. R., 548; 4th Ga. R., 75; 6th, 539, 47; 4th, 446; 10th, 263, 265; 34th, 458, 476, 477; 21st, 38. Cases in 14th, 18th, 20th, 23d, 25th, and 26th Ga. R., not at war with this principle: 38th Ga., 655.

FERRILL, HAMMOND & BROTHER for defendant, as to policy of the State against intra-territorial manumission, cited Acts 1801, 1803; Prince's Dig., 787-8; Act of 1818; Prince's Dig, 795, or Old Code, secs. 1875-6, and extra-territorial Acts 1859, page 68; R. Code, sec. 4984: 38th Ga. R., 660; 40th, 18, and same case this term. Testator's death

fixed the law of complainant's right: 18th Ga. R., 1; 25th, 660, 650.

McCay, J.

Very clearly, Mr. Ellis has no claim in his own right, under this will. If the provisions of the clause referred to can be carried into effect at all, it would be a most glaring perversion of the intent of the testator, to permit his bounty to go to the individual use of the trustee, who was clearly only looked upon as a mere agent. The testator only casts the duty upon him after the death of his own widow. If the trustee dies he provides for a successor.

We are not sure that this will was void, *ab initio*, as against the policy of the Acts, then in force, prohibiting domestic emancipation of slaves. We are inclined to the opinion that it rather comes within that class of cases which are only instances of the mode in which the testator intends that the duty of every master to old and infirm slaves shall, in his case, be performed. Here were, without doubt, infirm and helpless slaves, whom it was the duty of the testator to take care of while he lived, and whose support was a legal charge upon his estate at his death. Why should he not provide a mode of his own choosing by which that charge should be executed? Clearly, in doing this, he must not make the slaves practically free. But does he do this? He sets aside the use of certain lands, he names the slaves by name, including with those who are infirm some that are able to work. He provides provisions, tools, etc., and directs that the agent or trustee keep them on the place, work them, *direct* and *control* them. They are to be *compelled*, as a body, to earn their own support. We can easily conceive that, under certain very usual circumstances, this might have been a very legitimate mode of performing the duty which every man, both by the laws of humanity and by the laws of the State, owed to his infirm slaves.

But admitting that this might, under certain circumstances, have been a legal will, we think, for that very reason, it cannot now be enforced.

These negroes are now free. The duty—*the legal* duty—of the master to them has ceased; his *mode* of performing that duty was to put them in charge of a *trustee*, who should control them, *compel* the strong ones to work for the weak, and to act as a *master* over them all. This is now impracticable. They are, by *law*, their own masters. They cannot, by the trustee, be *compelled* to work. Nor is it probable that the strong ones will now be willing to work for the support of the weak and infirm; and, yet, this was the scheme of the testator, if it was legal.

If, on the contrary, his scheme was to make them practically free; to permit each one to do as he pleased, and *to enjoy the proceeds of his own labor,* then the will was illegal; and having been illegal then, it is illegal still. In either view of it, this provision of the will cannot be enforced, and we, therefore, think Judge BIGBY did right in sustaining this demurrer.

Judgment affirmed.